IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

| IN RE: | ) | |
|---|---|---|
| | ) | |
| EVERGREEN PALLET, LLC, | ) | Case No. 19-21983-RDB-11 |
| | ) | |
| Debtor. | ) | |

DEBTOR'S PLAN OF REORGANIZATION

Evergreen Pallet, LLC (the "Debtor") proposes the following Plan of Reorganization ("Plan" or "Plan of Reorganization") in this Chapter 11 case, pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. '1101 et seq. in compliance with the Local Rule of Bankruptcy Procedure 3016-3:

## I. INTRODUCTION

*The Debtor proposes to pay its creditors from cash flow of the business operations. There are five (5) classes of secured creditors, one (1) class of priority unsecured creditors and one (1) class of non-priority unsecured creditors. There is one class of equity security holders which include Jeffrey Ralls (100% member).*

*The unsecured non-priority creditors shall receive 10% of their claim, payable in monthly payments within no interest payable over seven (7) years, commencing with May 15, 2020 and on the fifteenth (15th) day of each month thereafter for 84 months. The proposed distributions are discussed in Articles III and V below.*

*All creditors and equity security holders should refer to this Plan and the Disclosure Statement for information regarding the precise treatment of their claims.*

*This Plan and the Disclosure Statement also provide detailed information regarding the terms for payment of the Debtor's creditors and other information designed to assist creditors and equity security holders in determining whether to accept the Plan.* **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

A.   *Purpose of the Plan and the Disclosure Statement*

*This Plan and the Disclosure Statement describe:*
- *The Debtor and significant events during the bankruptcy case.*
- *Historical information regarding the Debtor and the events leading to its bankruptcy filing.*
- *How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the Plan is confirmed).*
- *Who can vote on or object to the Plan.*
- *What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan.*
- *Why the Debtor believes that the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation.*

- *The effect of confirmation of the Plan.*

## B. *Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing*

*The Court has not yet confirmed the Plan. This section describes the procedures under which the Plan will or will not be confirmed.*

*1. Time and Place of the Hearing to Confirm the Plan/Approve Adequate of Disclosure Statement*
*The hearing at which the Court will consider confirmation of the Plan and determination of the adequacy of disclosure set forth in the Plan will be scheduled by the Court and take place at the U.S. Bankruptcy Court, 500 State Avenue, Kansas City, Kansas 66101.*

*2. Deadline For Voting to Accept or Reject the Plan*
*If you are entitled to vote to accept or reject the Plan, vote on the ballot that you will be supplied and return the ballot to Erlene Krigel, 4520 Main Street, Suite 700, Kansas City, MO 64111 by mail, fax (816) 756-1999 or email: ekrigel@krigelandkrigel.com. A deadline will be set by the Court.*

*3. Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan*
*Objections to the adequacy of the disclosures stated in this Plan and to confirmation of the Plan must be filed with the Court and served upon Debtor's counsel Erlene Krigel and the United States Trustee's office by a date that will be set by the Court.*

*4. Identity of Person to Contact for More Information*
*If you want additional information about the Plan, you should contact Erlene Krigel, Debtor's counsel at 816-756-5800 or by email: ekrigel@krigelandkrigel.com*

## II. DEFINITIONS

For the purpose of this Plan of Reorganization, the following terms shall have the respective meanings hereinafter set forth:

ALL TERMS USED IN THIS PLAN WHICH ARE NOT EXPRESSLY DEFINED HEREIN SHALL HAVE THE RESPECTIVE MEANINGS GIVEN SUCH TERMS IN SECTION 101 OF THE BANKRUPTCY CODE OR AS OTHERWISE DEFINED IN APPLICABLE PROVISIONS OF THE CODE OR THE RULES.

2.01 ALLOWED ADMINISTRATIVE CLAIM shall mean an Allowed Claim for which a Claimant asserts and is determined to be entitled to priority pursuant to Section 503 and Section 507(a)(1) of the Bankruptcy Code.

2.02 ALLOWED CLAIM shall mean a Claim against the Debtor that (i) is allowed by Final Order, or (ii) is scheduled as liquidated, undisputed or non-contingent by the Debtor in its schedules filed with the Bankruptcy Court as they may be amended or supplemented, or (iii) is timely filed with the Clerk of the Bankruptcy Court and no objection has been made to the allowance thereof.

2.03 ALLOWED PRIORITY CLAIM shall mean an Allowed Claim for which a Claimant asserts and is determined to be entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, other than Section 507(a)(1) and (a)(2).

2.04 ALLOWED SECURED CLAIM shall mean an Allowed Claim for which the Claimant asserts and is determined by a Final Order to hold a valid, perfected and enforceable lien, security interest

or other interest or encumbrance in property in which the Debtor has an interest not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or an Allowed Claim for which the Claimant asserts a set-off under Section 553 of the Bankruptcy Code, of the Claimant's interest in the Debtor=s interest in the property or to the extent of the amount subject to such set-off as the case may be.

      2.05      ALLOWED UNSECURED NON-PRIORITY CLAIM shall mean an Allowed Claim for which the Claimant has not asserted or is determined by a Final Order not to hold a valid, perfected and enforceable lien, security interest or other interest in or encumbrance against the property of the Debtor or right to set-off to secure the payment of such Claim.

      2.06      BANKRUPTCY CODE OR CODE shall mean the United States Bankruptcy Code as embodied in Title 11 of the United States Code, and all amendments thereof which are applicable to this proceeding.

      2.07      BANKRUPTCY COURT OR COURT shall mean the United States Bankruptcy Court for the District of Kanas in which the Chapter 11 proceeding of the Debtor has been filed, or such other court as may hereafter have jurisdiction of an act with respect to the Chapter 11 proceeding of the Debtor.

      2.08      CLAIM shall have the meaning set forth in Section 101(4) of the Bankruptcy Code.

      2.09      CLAIMANT shall mean the holder of a Claim.

      2.10      CLASS shall mean a category of Claimants or interests which are substantially similar to the other Claims or interests in such Class.

      2.11      CONFIRMATION DATE shall mean the date of the entry of a Final Order confirming the Plan of Reorganization.

      2.12      CONFIRMATION ORDER shall mean the Order entered by the Court confirming the Plan in accordance with Section 1129 of the Bankruptcy Code.

      2.13      DEBTOR shall mean Evergreen Pallet, LLC.

      2.14      EFFECTIVE DATE shall mean thirty (30) days following the date that the order of Confirmation is final and non-appealable.

      2.15      EQUITY INTEREST shall mean the rights of ownership in property of the Debtor.

      2.16      FILING DATE shall mean September 17, 2019.

      2.17      FINAL ORDER shall mean an order of the Bankruptcy Court that has not been reversed, modified, amended or stayed, and the time for appeal to seek review, certiorari or rehearing of which has expired and as to which no appeal, review or rehearing is pending, and has become conclusive of all matters adjudicated thereby and is in full force and effect.

      2.18      PLAN shall mean this Plan of Reorganization as it may be amended or modified and all exhibits, schedules or attachments filed with this Plan and with the accompanying Disclosure Statement, or which may be hereinafter submitted.

      2.19      PRO RATA, with respect to the holder of any Claim, shall mean in the same proportion that the amount of the Allowed Claim of such holder in any Class of Claims described in Article II bears

to the aggregate amount of all Claims in such Class, including in such aggregate amount both the Allowed Claims and all disputed Claims as of the date of any payment made pursuant to this Plan.

## III. CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and Equity Interests against the Debtor of any nature whatsoever, whether or not scheduled; liquidated or unliquidated; absolute or contingent, including all Claims arising from transactions of the Debtor or rejection of executory contracts, whether resulting in an Allowed Claim or not; and all interests arising from the ownership of the Debtor, shall be bound by the provisions of this Plan. The Claims and interests are hereby classified as follows:

3.1. Class One includes Newtek Small Business Finance ("Newtek"). As of the filing of the Proof of Claim on November 14, 2019, Newtek was owed $4,564,556.71, with an annual interest rate of 7.75%. This balance includes two Promissory Notes. The Promissory Notes are secured by a blanket lien on assets, including, but not limited to: cash, bank accounts, non-factored accounts receivable, furniture, fixtures, equipment, and inventory of the Debtor. Newtek agreed to subordinate its lien against the factored accounts receivable and inventory to CDS Business Services, Inc. Further, the two Newtek loans confirm that it has liens on the personal and real property of Evergreen Recycle, LLC, Magill Trucking, LLC, Ralls Properties, LLC, and Jeff Ralls personally.

The total value of Newtek's collateral is $2,428,379. A detail of the Newtek collateral is found on page 7-8 of the Disclosure Statement. Newtek shall be treated as a secured creditor to the extent of $2,428,379 and an unsecured non-priority creditor for the balance of the debt in Class Ten. The total value is made up of assets pledged by the Debtor, its related entities and Jeff Ralls personally. The portion of the debt that equals the value of the collateral is the Allowed Secured Claim.

3.2. Class Two includes CDS Business Services, Inc. ("CDS"), with an inventory loan of approximately $417,000 and an accounts receivable loan in the approximate amount of $626,317.

The value of the factored accounts receivable is $626,317 as of December 31, 2019. CDS shall be treated as a fully secured creditor for this loan. This debt is an Allowed Secured Claim.

The second loan of CDS is the inventory loan. CDS shall be treated as a secured creditor to the extent of the value of the inventory collateral of Debtor, Magill, and Recycle which is $286,269. CDS shall be treated as an unsecured creditor in Class Ten as to the balance of its inventory claim of $144,298

3.3 Class Three includes the secured claim of Financial Pacific Leasing Inc. ("FPL"). FPL has a lien on a 2007 T-Tek Repair and Sortation system repair line with 4 stacking system and trash conveyor (S/N: ST4-007). The balance owed according to the Proof of Claim filed on October 11, 2019 is $42,768. The value of the system is $15,000. FPL's claim shall be treated as a secured creditor to the extent of the value of its collateral and an unsecured creditor for any balance and included in Class Ten.

3.4. Class Four includes Pawnee Leasing Corporation ("Pawnee"). Pawnee has a lien on a T Tek Mot.lei-Ropnir Line Mfg. repair line with trash conveyor. Pawnee is owed approximately $31,898. The value of the system is $15,000. Pawnee shall be treated as a secured creditor to the extent of the value of its collateral and an unsecured creditor for any balance and included in Class Ten.

3.5 Class Five includes Emprise Bank ("Emprise"). The Proof of Claim filed by Emprise Bank is for $11,773.99. Emprise claims a lien on Kaiser compressors and inventory, chattel paper, accounts receivable and equipment. As Emprise's lien is junior to the liens of Newtek and CDS except as to the Kaiser compressors which are valued at $12,000, Emprise will be treated as a fully secured creditor.

Emprise will receive $539.51/month commencing sixty (60) days after the Plan is confirmed and until the balance is paid in full.

       3.6       Class Six includes the equipment lease with Lease Consultants Corporation ("LCC") for a Hotsy Model 1453P Pressure Washer. The lease will be assumed. The payments are 36 months as of 8/13/19 of $365.36 per month.

       3.7       Class Seven includes the lease of the premises at 302 W. 53 Street North, Park City, Kansas where the Debtor operates its business. The landlord is MCHB-Pallet, LLC and the tenant is the Debtor and Jeffrey Ralls. The lease, dated 10/28/14 is a ten (10) year lease. It is a triple net lease. The month payments for years 6-8 is $13,000/month and the rent for years 9-10 is $14,000/month. The lease will be assumed.

       3.8       Class Eight includes the lease with Lift Parts Service, LLC for a 2018 Linde H25T/600 piece of equipment. The lease term is 48 months with a base rent of $1,350/month plus overage of $6.15/hour if the usage is over 3,000 hours per year. The lease will be assumed.

       3.9       Class Nine includes all Allowed Priority Claims including the unsecured claim of the Internal Revenue Service in the amount of $204,621.70.

       3.10      Class Ten includes all Allowed Unsecured Non-Priority Claims which total approximately $3,708,888.

       3.11      Class Eleven includes the equity security holder Jeffrey Ralls, the sole member of the Debtor.

       3.12.     Class Twelve includes all Allowed Administrative Claims, whether incurred before or after the Confirmation Date, allowable under Section 330 and Section 503(b) of the Bankruptcy Code, and which are entitled to priority payment under Section 507(a)(1) of the Bankruptcy Code. The Claims of this Class include attorneys' fees and accounting fees for post-petition services rendered to the Debtor on and after the Filing Date. These Claims also include Claims of the United States Trustee to the extent of any quarterly fees due under 28 U.S.C. Section 1930(a)(6) as of the Confirmation Date and post-petition taxes, if any.

## IV. DESIGNATION OF IMPAIRED CLASSES

       4.1       Classes One, Two, Three, Four, Ten and Eleven are impaired by the Plan.

## V. TREATMENT OF CLAIMS AND INTERESTS

       5.1 The Class One Claim of Newtek Small Business Finance ("Newtek") shall be paid as follows: The value of the collateral pledged to Newtek is $2,428,379. The Debtor will pay Newtek as a secured claim, with a fixed interest of 6% per annum, the principal amount of $2,428,379, payable as follows: Debtor shall pay Newtek equal monthly payments of interest only, commencing on the thirtieth (30th) day following confirmation of the Plan, and continuing for six (6) months. In month seven (7) following confirmation of the Plan, the Debtor will pay Newtek amortized payments of principal and interest, amortized over 19.5 years and all due and payable seven (7) years from the date of the first installment of principal and interest as set out herein. The interest only payments will be $12,142 per month, and the principal and interest payments will be $17,629. The balance of Newtek's claim ($2,136,177) shall be treated as an unsecured claim in Class Ten. Class One is impaired.

5.2. The Class Two Claims of CDS Business Services, Inc. ("CDS") shall be paid as follows:

Accounts Receivable Loan: The Debtor will pay CDS the full balance owed on the accounts receivable loan and continue with the accounts receivable factoring program as per the previous contract entered into between the parties. CDS has the first and senior lien against the accounts receivable.

Inventory Loan: The value of the Debtor's collateral, combined with the collateral pledged by related entities Evergreen Recycle, LLC and Magill Trucking LLC, is $286,269. While the value of the inventory collateral for Debtor was scheduled higher on the documentation previously provided to CDS (listed at $340,931), some of the collateral's marketability is extremely limited. This significantly reduces its value. The true value of Debtor's inventory is $230,451. Further, inventory of Evergreen Recycle, LLC, which has been previously valued at $84,305, is made up largely of compost. That entity has not sold compost for months. The true value of Evergreen Recycle, LLC's inventory is $16,305. The inventory of Magill Trucking LLC is $39,513. Thus, by adding $230,451, $16,305 and $39,513, the total inventory pledged to CDS has a current value of $286,269.

The Debtor shall pay CDS, as a secured creditor, the amount of $286,269. Debtor shall pay CDS equal monthly payments of interest only, commencing on the thirtieth (30th) day following confirmation of the Plan, and continuing for six (6) months. In month seven (7) following confirmation of the Plan, the Debtor will pay CDS amortized payments of principal and interest, amortized over 19.5 years and all due and payable seven (7) years from the date of the first installment of principal and interest as set out herein. The monthly payment of interest only is $1,431.35 and the monthly principal and interest payment will be $2,050.42. The unsecured portion of the CDS Inventory Claim of $144,298 shall be treated in Class Ten as an unsecured claim. Class Two is impaired.

5.3 The Class Three Claims of Financial Pacific Leasing, Inc. ("FPL") will be paid as follows: The value of FPL's collateral (2007 T-Tek Repair and Sortation System Repair Line with 4 stacking system and trash conveyor—S/N: ST4-007) is $15,000. FPL shall be paid as a secured creditor the sum of $15,000. This sum shall bear interest at 6% per annum, and FPL shall be paid at $219.13/month for 84 months or until fully paid. Payments shall commence on the thirtieth (30th) day following confirmation of the plan and continuing each month on the first day of each month. The balance of FPL's claim of $27,768 (as of 10/11/19) shall be treated as an unsecured claim in Class Ten. Class Three is impaired.

5.4 The Class Four Claim of Pawnee Leasing Corporation ("Pawnee") will be paid as follows: The value of Pawnee's collateral (T Tek Mot.lei-Ropnir Line Mfg. repair line with trash conveyor) is $15,000. Pawnee shall be paid as a secured creditor the sum of $15,000. This sum shall bear interest at 6% per annum, and shall be paid at $219.13/month for 84 months or until fully paid. Payments shall commence on the thirtieth (30th) day following confirmation of the plan and continuing each month on the first day of each month. The balance of Pawnee's claim (approximately $16,898) shall be treated as an unsecured claim in Class Ten. Class Four is impaired.

5.5 The Class Five Claim of Emprise Bank ("Emprise") of $11,773.39 will be treated as a secured claim. Emprise claims a purchase money security interest in Kaiser compressors and a non-purchase money security interest in inventory, chattel paper, accounts receivable and equipment. The value of the compressors is $20,000. Emprise will continue to be paid $539.51 per month until the loan is paid in full. Class Five is unimpaired.

5.6 The Class Six Claim of Lease Consultants Corporation ("LCC") is an equipment lease for a Hotsy Model 1453P Pressure Washer, which will be assumed. The monthly payments are $365.36 until the lease is completed. Class Six is unimpaired.

5.7  The Class Seven Claim of MCHB-Pallet LLC is a lease of real estate located at 302 W. 53 Street North, Park City, Kansas, which will be assumed. The monthly payments are $13,000 at this time (adjusted during life of lease).  Class Seven is unimpaired.

5.8  The Class Eight Claim of Lift Parts Service, LLC ("LPS") is an equipment lease (2018 Linde H25T/600), which will be assumed.  The monthly payments are $365.36 until the lease is completed. Class Eight is unimpaired.

5.9  The Class Nine Claims of Priority Unsecured Tax Claims of the Internal Revenue Service shall be paid in full at the prevailing interest rate established by the Internal Revenue Service, in periodic payments with any unpaid balance being due and payable in October, 2024.  The monthly payments with interest at 5% per annum are estimated at $5,287 per month.  These payments will commence May 1, 2020 at the earliest.  Any unpaid amount that is due and payable by October 17, 2024, shall be paid in full on that date.  Class Nine is unimpaired.

5.10  Class Ten Claims, which are the Unsecured Non-Priority Claims, shall be paid as follows: The Allowed Unsecured Non-Priority Claims shall receive 10% of their claim, payable in monthly payments with no interest payable over seven (7) years, commencing on the thirtieth (30th) day following confirmation of the plan and continuing each month on the fifteenth (15th) day of each month thereafter for 84 months.  Based upon unsecured claims of $3,707,888, the total paid to Class Ten is $370,789.  The monthly payment would be approximately $4,414.  Class Ten is impaired.

5.11  Class Eleven Claim is any claim of the equity security holder Jeffrey Ralls, who is the sole member of the Debtor. For any loans that he has extended to the Debtor and for any investment he has made in exchange for his ownership in the Debtor, Jeffrey Ralls agrees that his claim is subordinated to all other claims.  Class Eleven is impaired.

5.12  Class Twelve Claims are the administrative claims.  These are the Allowed Administrative Claims, whether incurred before or after the Confirmation Date, allowable under Section 330 and Section 503(b) of the Bankruptcy Code, and which are entitled to priority payment under Section 507(a)(1) of the Bankruptcy Code.  The Claims of this Class include attorneys' fees and accounting fees for post-petition services rendered to the Debtor on and after the Filing Date.  These Claims also include Claims of the United States Trustee to the extent of any quarterly fees due under 28 U.S.C. Section 1930(a)(6) as of the Confirmation Date and post-petition taxes, if any.  All quarterly fees owing to the United States Trustee shall be paid by the Debtor within 10 days of the entry of the order of confirmation or on the Effective Date of the Plan as required by Section 1129(a)(12) of the Bankruptcy Code, and the payment of quarterly fees shall be made until the case is closed by order of the Court, as required by Public Law 104-99, Title II, Section 211, 110 Stat. 37 (effective January 27, 1996), as amended by Public Law 106-208, 110 Stat. 3009 (September 30, 1996).  Class Twelve is unimpaired.

5.13  Debtor shall have thirty (30) days after confirmation of the Plan within which to object to any Claim filed in the case.  Any Claim not objected to within such period shall be deemed accepted.

## VI. PROVISIONS FOR IMPLEMENTING THE PLAN

6.1  The Debtor continue the operation of its business. The Debtor proposes to pay its creditors from cash flow of the business operations. As stated above, there are five (5) classes of secured creditors, one (1) class of priority unsecured creditors and one (1) class of non-priority unsecured creditors. There are three (3) classes of leases, all of which will be assumed.  There is one class of equity security holders which include Jeffrey Ralls.

6.2     Nothing contained herein or affecting these proceedings, including a lapse in or cessation of business operations, or a change of business purpose, shall cause or shall be deemed to cause any involuntary dissolution of the Debtor's business unless such dissolution is required as a matter of law.

6.3     The Debtor shall be authorized to execute and deliver all documents and to take or cause to be taken all action necessary or appropriate to execute and implement the provisions of the Plan.

## VII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1     All unnamed executory contracts or unexpired leases are rejected under the Plan unless specifically assumed in the Plan and Disclosure Statement.  The lease for the business location is assumed and all other unexpired leases or executory contracts that are not specifically mentioned are rejected.

7.2     For any executory contract that is rejected and results in alleged damages to the non-debtor party, a proof of claim must be timely filed with the Bankruptcy Court and served on the Debtor's counsel.  Such Claim shall be treated as a Class Ten Claim to the extent of its allowance.

## VIII. RETENTION OF JURISDICTION

The Court shall retain jurisdiction of this case pursuant to the provisions of the Bankruptcy Code until the proceedings are closed, more specifically with respect to the following matters:

8.1     To classify, allow or disallow Claims and direct distributions of funds under the Plan and to adjudicate all controversies concerning classification or allowance of any Claim or interest.

8.2     To enforce performance of the Plan or any provisions thereof.

8.3     To hear and determine all Claims arising from the rejection of executory contracts, including leases, and to consummate the rejection and termination thereof.

8.4     To liquidate damages or estimate Claims in connection with any disputed, contingent or unliquidated Claims.

8.5     To adjudicate all Claims to an ownership interest in any property of the Debtor or of the estate or any proceeds thereof.

8.6     To adjudicate all Claims or controversies arising out of the purchases, sales or contracts made or undertaken by the Debtor during the pendency of the proceedings.

8.7     To recover all assets and properties of the Debtor wherever located.

8.8     To hear and determine matters concerning state, local and federal taxes pursuant to, inter alia, Sections 346, 505, 525 and 1146 of the Bankruptcy Code.

8.9     To hear and determine and pass upon any action or proceeding brought by the Debtor including, but not limited to, actions pursuant to Sections 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

8.10    To hear and determine all actions and proceedings brought by the Debtor, arising in or relating to the Debtor's reorganization case or any issue arising under the Bankruptcy Code.

8.11 To determine the validity, extent and priority of all liens against property of the Debtor=s estate.

8.12 To consider any modifications of the Plan pursuant to Section 1127 of the Bankruptcy Code and/or modification of the Plan after substantial consummation as defined in Section 1101(2) of the Bankruptcy Code.

8.13 To hear and determine all controversies, suits and disputes that may arise in connection with the interruption or enforcement of the Plan.

8.14 To hear and determine such matters and make such orders as are consistent with the Plan and as may be necessary or desirable to carry out the provisions thereof.

8.15 If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising out of these proceedings, including the matters set forth herein, or if the Debtor elects to bring an action in any other forum, this Article VII shall have no effect upon and shall not control, prohibit or limit the exercise of any jurisdiction by any other court having jurisdiction with respect to such matter.

## IX. GENERAL PROVISIONS

9.1 No entity may commence or continue any action or proceeding, or perform any act to interfere with the implementation and consummation of this Plan and the payments to be made hereunder.

9.2 Notwithstanding any other provision of the Plan specifying a date or time for payment or distribution hereunder, payments and distributions in respect of any Claim or interest which at such date or time is disputed, unliquidated or contingent shall not be made until such Claim or interest becomes an Allowed Claim, whereupon such payments and distributions shall be made promptly pursuant to and in accordance with the Plan.

9.3 In the event that this Plan is not confirmed under the provisions of Section 1129(a) of the Bankruptcy Code, the Debtor reserves the right to amend or modify this Plan so as to comply with the confirmation requirements of Section 1129(a), or to seek confirmation under the provisions of Section 1129(b) of the Bankruptcy Code.

9.4 This Plan and the Disclosure Statement comply with 11 U.S.C. Sections 1129(a) as (1) the plan complies with the applicable provision of Title 11; as (2) the proponent of the plan complies with the applicable provisions of this title; as (3) the plan has been proposed in good faith and not by any means forbidden by law; as (4) payment to professionals are only made by prior approval of the court and have been or will be approved as reasonable; as (5) the documents disclose the members, the parties running the company now and upon confirmation and whether there are any other insiders; as (6) there is no governmental regulatory commission involved; as (7) each impaired class has either accepted the plan as amended or will receive as much or more if the Debtor was liquidated through a chapter 7 bankruptcy case; as (8) all secured creditors have either accepted the plan or are not impaired; as the treatment of the creditors complies with (9); as at least one class of creditors who are impaired has voted for the plan pursuant to subsection (10); based upon the projection of business activity, it is not likely that confirmation would be followed by liquidation or the need for further reorganization pursuant to subsection (11); as under (12) all U.S. Trustee fees are current; and as subsections (13), (14) and (15) do not apply.

## X. MODIFICATION

       10.1     The Debtor may propose amendments or modifications to the Plan at any time prior to the Confirmation Date with the approval of the Bankruptcy Court.

       10.2     After the Confirmation Date and before substantial consummation, the Plan may also be modified or amended, but only after notice and a hearing, and with the approval of the Bankruptcy Court.

       10.3     The holder of an Allowed Claim who has accepted or rejected the Plan is deemed to have accepted or rejected any modified or amended Plan unless, within such time as may be specified by the Court, the holder changes its previous acceptance or rejection.

Date February 18, 2020

                                                   EVERGREEN PALLET, LLC.

                                                   By /s/ *Jeffrey Ralls*
                                                   Jeffrey Ralls
                                                   Sole Member

KRIGEL & KRIGEL, P.C.
 */s/ Erlene W. Krigel*
Erlene W. Krigel,   No. 70425
4520 Main Street, Suite 700
Kansas City, Missouri 64111
Telephone: (816) 756-5800
Fax: (816) 756-1999
ATTORNEYS FOR DEBTOR